# APPENDIX 1

Slip Copy, 2011 WL 1808779 (E.D.Pa.)
**(Cite as: 2011 WL 1808779 (E.D.Pa.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Tara ANDERSON
v.
AFNI, INC.

Civil Action No. 10–4064.
May 11, 2011.

Erin Amanda Novak, John Soumilas, Mark D. Mailman, Francis & Mailman PC, Philadelphia, PA, for Tara Anderson.

Richard J. Perr, Fineman Krekstein & Harris, P.C., Philadelphia, PA, for AFNI, Inc.

*MEMORANDUM*

DALZELL, District Judge.

**\*1** Plaintiff Tara Anderson sues defendant AFNI, Inc. ("AFNI") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., and the Pennsylvania common law of privacy. On January 7, 2011, Anderson filed a motion for partial summary judgment and on the same day AFNI filed its motion for summary judgment. Anderson's motion claims that she is entitled to summary judgment on her TCPA claim, while AFNI's motion seeks summary judgment on all three of Anderson's claims. For the reasons set forth below, we will deny Anderson's motion for partial summary judgment, grant AFNI's motion for summary judgment as to the federal claims, and dismiss the remainder of the case.

**I.** *Factual Background*

Under Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," where "[a] party asserting that there is a genuine dispute as to a material fact must support that assertion with specific citations to the record." *Bello v. Romeo,* 2011 WL 1519389, at \*3 (3d Cir.2011) (citing Rule 56(c)). We will thus begin by reciting the undisputed facts in this matter, and then consider the disputed facts that the parties have supported with their specific citations to the record.

The parties do not dispute that Tara Anderson was the victim of identity theft at the hands of Tara Sampson, who pled guilty to that offense and served time in state prison for her actions. Pl.'s Partial Mot. Summ. J. ("Pl.'s MSJ") ¶¶ 4–5. Between 2007 and 2010, AFNI purchased six delinquent Verizon accounts in Tara Sampson's name; the account numbers for these accounts ended in 69, 56, 92, 14, 70, and 88. Def.'s Mot. Summ. J. ("Def.'s MSJ") ¶ 1; Pl.'s Resp. to Def.'s Mot. Summ. J. ("Pl.'s Resp.") ¶ 1. Anderson was not responsible for the debts associated with those accounts, and never gave permission to AFNI to call her at her home telephone number—a number with the area code "412" and ending in "2345" ("the 412 number")—or at any other number. Pl.'s MSJ ¶¶ 2, 3, 6.

AFNI acquired Account 69 on October 19, 2007 and Account 56 on May 23, 2009, and made no attempt thereafter to collect on either account. Def.'s MSJ ¶¶ 2–3; Pl.'s Resp. ¶¶ 2–3. AFNI did report Account 56 to credit reporting agencies, however, one of which placed the account tradeline on Anderson's credit profile. Def.'s MSJ ¶ 4; Pl.'s Resp. ¶ 4. In 2009, Anderson discovered this account on her credit report, and disputed it through the credit reporting agency. Pl.'s MSJ ¶ 8–9. In August of 2009, AFNI received a Consumer Dispute Verification ("CDV") Form from the credit reporting agency which stated that Anderson "[c]laims true identity fraud, account fraudulently opened. Provide or confirm complete ID." Def.'s MSJ ¶ 5; Pl.'s Resp. ¶ 5. AFNI requested that the credit reporting agency delete the tradeline from Anderson's

Slip Copy, 2011 WL 1808779 (E.D.Pa.)
**(Cite as: 2011 WL 1808779 (E.D.Pa.))**

credit profile, and on August 19, 2009, AFNI closed Account 56.[FN1] Def.'s MSJ ¶¶ 6–7; Pl.'s Resp. ¶¶ 6–7.

> FN1. AFNI had closed Account 69 on June 1, 2010. Def.'s MSJ ¶ 2; Pl.'s Resp. ¶ 2. Neither AFNI nor Anderson offers an explanation as to why AFNI closed this account.

**\*2** AFNI purchased Account 92 on July 22, 2009 and engaged skip tracing services to find contact information for Sampson, which yielded the 412 number. Def.'s MSJ ¶ 8; Pl.'s Resp. ¶ 8. A collection call placed to this number on January 20, 2010 reached Anderson, who informed an AFNI representative that the number did not belong to Sampson and should be removed from Account 92—a request with which AFNI immediately complied. Def.'s MSJ ¶¶ 9–10; Pl.'s Resp. ¶ ¶ 9–10.

On April 19, 2010, AFNI purchased Account 14 and then bought Accounts 70 and 88 on June 28, 2010. Def.'s MSJ ¶¶ 13, 15, 17; Pl.'s Resp. ¶¶ 13, 15, 17. With respect to each account, AFNI once again engaged skip tracing services to locate Sampson, and these services once again produced the 412 number. *Id*. AFNI attempted to contact Sampson to collect on these accounts between April and August of 2010, with some of its attempts made to the 412 number, and though Anderson answered some of these calls after January of 2010, she never informed AFNI that it was calling the wrong number in its efforts to reach Sampson. Def.'s MSJ ¶¶ 14, 16, 18, 19; Pl.'s Resp. ¶¶ 14, 16, 18, 19.

From January through August 2010, AFNI placed forty-five calls to the 412 number: twenty-five calls regarding Account 14, eleven calls for Account 70, five calls for Account 88, and four calls for Account 92. Def.'s MSJ ¶ 19; Pl.'s Resp. ¶ 19. Anderson answered eighteen of these calls. *Id*. AFNI used a telephone vendor, SoundBite, to place collection calls to the 412 number, and this system was designed to play an automated message under certain circumstances. Def.'s MSJ ¶¶ 25–26; Pl.'s Resp. ¶¶ 25–26. This message identified the person whom AFNI was attempting to contact and listed a series of options that the call recipient could choose, including pressing a number if the telephone number called did not correspond to the person AFNI was attempting to reach. Def.'s MSJ ¶ 27; Pl.'s Resp. ¶ 27.

At all times, AFNI attempted only to collect debts Sampson owed, and Anderson at no time believed that she owed the debts that AFNI sought to collect. Def.'s MSJ ¶¶ 23–24; Pl.'s Resp. ¶¶ 23–24. Moreover, though the 412 number is indeed Anderson's home phone number, Pl.'s MSJ ¶ 2, she is not the legal subscriber for the number; her husband, Philip Anderson, is. Def.'s Suppl. in Supp. of Mot. Summ. J. ("Def.'s MSJ Suppl."); Pl.'s Resp. at 21. AFNI made no calls to any cellular number associated with Anderson. Def.'s MSJ ¶ 30; Pl.'s Resp. ¶ 30.

Finally, the parties agree that AFNI has in place policies regarding telephone numbers that AFNI learns are not associated with the entity it is attempting to contact: such policies direct account representatives to remove the numbers from each account in AFNI's possession in which they appear, and to make a notation to those accounts that the specified numbers are incorrect. Def.'s MSJ ¶¶ 33–35, 37–38; Pl.'s Resp. ¶¶ 33–35, 37–38. AFNI also maintains a "universal Do Not Call List" of telephone numbers to which calls are never placed. Def.'s MSJ ¶ 39; Pl.'s Resp. ¶ 39. AFNI placed the 412 number on its "Do Not Call" list after Anderson brought this action. Pl.'s MSJ ¶ 29.

**\*3** While these are the undisputed facts, the parties disagree on a number of other points, including (1) the number of calls AFNI initiated to Anderson; (2) whether all calls AFNI placed to Anderson had the potential to deliver an automated message; and (3) whether the debts of Sampson that AFNI sought to collect arose from personal, family, or household purposes.

Regarding the number of calls AFNI initiated

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

to the 412 number, Anderson alleges that AFNI places debt collection calls through its agents Soundbite and Livevox, and that each day AFNI "initiates a 'daily file' request to one of its robo-dialer vendors that a set of accounts be collected." Pl.'s MSJ ¶¶ 17–18 (citing Dep. of Joe Wenslauskis, Ex. E to Pl.'s MSJ at 13–14, 16). Anderson asserts that between January 8, 2010 and August 15, 2010, AFNI "attempted" seventy-six such calls to the 412 number, *id*. ¶ 22 (citing AFNI's Records, Ex. F to Pl.'s MSJ), arguing that it "is undisputed that AFNI began the process of placing robo-calls to Plaintiff ... 76 times." *Id*. at 9.

AFNI concedes that "[t]he SoundBite report indicates that there are 76 instances of that phone number showing up in the SoundBite data base," Def.'s Resp. to Pl.'s MSJ ("Def.'s Resp.") at 6 (citing Dep. of Joe Wenslauskis, Ex. 12 to Def.'s MSJ at 64). However, AFNI avers that "[t]he record clearly shows that AFNI did not initiate a call with each one of the entries," and that "[o]f those 76 instances, only 45 calls were made." *Id*. (emphasis omitted) (citing Ex. 12 to Def.'s MSJ at 57, 65).

As for the capacity of AFNI's calls to deliver an automated message, Anderson claims that "[e]very call placed by SoundBite on AFNI's behalf has the potential to deliver an automated, prerecorded message, whether answered by a person or connected to a voicemail or answering service." Pl.'s Resp. ¶ 26 (citing Dep. of Joe Wenslauskis, Ex. L to Pl.'s Resp. at 27). AFNI responds that "[t]he SoundBite system, as configured by AFNI, is not designed to play an automated message for any received call other than a call answered by a live person." Def.'s MSJ ¶ 26 (citing Ex. 12 to Def.'s MSJ at 68).

Regarding the nature of Sampson's debts, AFNI asserts that "[t]here is no evidence that the underlying credit transactions that created the obligations which became Accounts 14, 77 and 88 were for personal, family or household purposes." *Id*. ¶ 21 (citing Dep. of Tara Anderson, Ex. 10 to Def.'s MSJ at 26–28). Anderson disagrees, arguing that: (1) AFNI sought to collect the debts in question from Tara Sampson, not any company or corporation, Pl.'s Resp. ¶ 21 (citing Dep. of Lisa Anderson, Ex. C to Pl.'s Resp. at 70); (2) the addresses found in AFNI's collection notes are residential addresses, *id*. (citing AFNI's Collection Notes, Ex. H to Pl.'s Resp at 3–4); (3) AFNI sent a debt collection letter to Anderson's residential address which was addressed to an individual, not a business, and included the verbatim warning the FDCPA requires for consumer debts, *id*. (citing AFNI's Collection Letter, Ex. J to Pl.'s Resp.); and (4) the debt associated with Account 56 was placed on Anderson's personal credit report, not any business credit report. *Id*. (citing Consumer Dispute Verification, Ex. A to Pl.'s Resp.).

**II.** *Analysis*

**\*4** On a motion for summary judgment, "[t]he moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case." *Connection Training Servs. v. City of Phila.*, 358 Fed. Appx. 315, 318 (3d Cir.2009) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial," *id*. (citing *Celotex,* 477 U.S. at 324). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.... The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (cited in *Sheddy Family Trust ex rel. Sheddy v. Piatt Twp.,* 404 Fed. Appx. 629, 631 (3d Cir.2010)). Of course, we "must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (cited in *Eisenberry*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

v. Shaw Bros., 2011 WL 1226881, at *1 (3d Cir.2011)).

In evaluating Anderson's motion for partial summary judgment, then, the case law requires that we draw different inferences than we would in considering AFNI's motion for summary judgment. Because we can rule on both Anderson's motion—which solely concerns her claim under the TCPA—and AFNI's motion with respect to the TCPA on the basis of the undisputed facts, we will not draw any factual inferences in our TCPA analysis. In examining the remainder of AFNI's motion for summary judgment, we will draw all reasonable inferences in favor of Anderson as the nonmoving party.

**A.** *Anderson's Claim under the TCPA*

As our Court of Appeals has observed, the Telephone Consumer Protection Act was "[e]nacted in 1991 as part of the Federal Communications Act" to "deal with an increasingly common nuisance-telemarketing." ErieNet, Inc. v. Velocity Net, Inc., 156 F.3d 513, 514 (3d Cir.1998). The TCPA provides that

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> ...
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications Commission, "FCC"] under paragraph (2)(B).

**\*5** 47 U.S.C. § 227(b)(1)(A)-(B). Under § 227(d)(1)(A), it is also

> unlawful for any person within the United States ... to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards.

Under the TCPA, plaintiffs may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." § 227(b)(3)(B). "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph B of this paragraph." § 227(b)(3).

Anderson asserts three claims under the TCPA, arguing that AFNI violated §§ 227(b)(1)(A)(iii), (b)(1)(B), and (d)(1)(A) by (1) "initiating telephone calls to Plaintiff's cellular telephone using artificial or prerecorded voices to deliver messages without Plaintiff's consent," Pl.'s Compl. ¶ 32; (2) "initiating telephone calls to Plaintiff's residential telephone line using artificial or prerecorded voices to deliver messages without Plaintiff's consent," *id*.; and (3) "initiating telephone calls to Plaintiff using an automated telephone dialing system that was not in compliance with the technical and procedural standards prescribed by the TCPA." *Id*.

Anderson asserts that she is entitled to sum-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

mary judgment on her TCPA claims because "the undisputed evidence shows that AFNI initiated 76 telephone calls to Plaintiff at her home number using its robo-dialers with the capacity to deliver prerecorded voice messages to the recipient of such calls," and "[t]he evidence also shows that at no time did the Plaintiff consent to these phone calls ." Pl.'s MSJ at 8. Anderson further urges that "this Court should find willful violations and award treble damages of $1,500 for each unlawful call after January 20, 2010," for a total judgment of $110,000. *Id*. at 10, 11.

AFNI claims that it is entitled to summary judgment on Anderson's TCPA claims for three reasons [FN2]: (1) "Plaintiff cannot show that she has standing to bring a claim under the TCPA," Def.'s MSJ at 28; (2) "AFNI's telephone calls placed to [the 412 number] are exempt under 47 C.F.R. § 64.1200(a)(2)(iii)," *id*. at 31, since the calls were "neither an unsolicited advertisement or [*sic*] a telephone solicitation," *id*. at 30; (3) Anderson's claim is foreclosed by the FCC's "express exemption for calls made to a party with whom the caller has an established business relationship," *id*. at 32 (citing 47 C.F.R. § 64.1200(a)(2) (iv)), and the FCC's finding that " 'all debt collection circumstances involve a prior or existing business relationship,' " *id*. (quoting 7 FCC Rcd. 8752, 8771–72 (1992)); and (4) AFNI "is not using an 'automatic telephone dialing system' as defined by the TCPA." *Id*. at 35.

> FN2. AFNI also argues that, if we find that it is not entitled to summary judgment on Anderson's TCPA claims, it is nonetheless true that Anderson "is only entitled to seek compensation for ... eighteen (18) calls under the TCPA," Def.'s MSJ at 36, and that treble damages are not warranted because "AFNI did not knowingly or willfully violate the TCPA." *Id*. at 37. Because we will grant summary judgment to AFNI on the TCPA claims, we need not reach these contentions.

**1.** *Anderson's Standing Under The TCPA*

**\*6** We will first consider whether Anderson has standing to bring her TCPA claims. As our Court of Appeals has noted, "[t]he doctrine of standing incorporates both a constitutional element and a nonconstitutional, 'prudential' element." *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 174–75 (3d Cir.2001). A court should also consider whether a plaintiff bringing suit under an Act of Congress has statutory standing, or "whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir.2007) (emphasis in original).

"Constitutional standing is a threshold issue that we should address before examining issues of prudential standing and statutory interpretation." *Joint Stock Soc'y,* 266 F.3d at 175. As the Supreme Court explained in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations, quotation marks, brackets, and ellipses omitted):

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

We are satisfied that Anderson has constitutional standing in this case. She has demonstrated an injury in fact—the receipt of nearly fifty calls to her residential telephone number over eight months from an apparently implacable automated caller. AFNI caused this injury by initiating these calls and

the injury Anderson suffered would be redressed by the award of damages.

As for prudential standing, our Court of Appeals explained its requirements in *Freeman v. Corzine,* 629 F.3d 146, 154 (3d Cir.2010) (quotation marks and brackets omitted):

> Prudential standing requires that (1) a litigant assert his or her own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based.

Anderson sues here to vindicate her own legal interests, she asserts a specific grievance against AFNI, and her interests in avoiding harassment via the telephone line installed in her home are not "so marginally related to or inconsistent with the purposes implicit in the statute" that they fail to fall within the TCPA's zone of interests. *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). We thus find that she has prudential standing.

\*7 The crux of the parties' disagreement over standing concerns its statutory component. To determine whether a plaintiff has statutory standing, "we employ the usual tools of statutory interpretation. We look first at the text of the statute and then, if ambiguous, to other indicia of congressional intent such as the legislative history." *Graden,* 496 F.3d at 295. Anderson suggests that "the TCPA permits a private cause of action for any 'person,'" Pl.'s Resp. at 22, while AFNI responds that "it is only the telephone subscriber who has standing to bring an action for statutory damages under the TCPA according to the legislative history and references to residential telephone subscribers in the text of the TCPA and subsequent regulations," Def.'s MSJ at 27, and that "an unintended recipient of a telephone call lacks standing to bring suit under the TCPA." *Id.*

Under 47 U.S.C. § 227(b)(3),

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

The plain text of this provision suggests that Congress did not mean to circumscribe standing beyond its constitutional and prudential requirements, since it unambiguously grants a cause of action to any "person or entity."

AFNI argues in favor of a more restricted grant of standing, citing *Kopff v. World Research Group, LLC,* 568 F.Supp.2d 39 (D.D.C.2008), *Leyse v. Bank of America, Nat'l Assoc.,* 2010 WL 2382400 (S.D.N.Y.2010), and *Cellco P'ship v. Dealers Warranty, LLC,* 2010 WL 3946713 (D.N.J.2010). In *Leyse,* Judge Koeltl held that "an unintended and incidental recipient of the call" is "not a 'called party' within the meaning of § 227(b)(1)(B)," 2010 WL 2382400, at \*4, and hence "lacks standing to seek statutory damages," *id.* at \*6, since "[t]o find otherwise would mean that when a business calls a person with a prerecorded message, that business could be liable to any individual who answers the phone despite the fact that the business only intended to call one person." *Id.* at \*5. The Court in *Kopff* similarly concluded that "where there is a specific, existing addressee ... the Court is persuaded that the TCPA cause of action is his, and not his staff's." 568 F.Supp.2d at 42. And in *Cellco* Judge Wolfson concluded that since

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

§ 227(b) (1)(A)(iii) provides an exception for calls made for emergency purposes or made with the prior express consent of the called party.... the only logical reading of § 227(b)(1)(A) (iii) is one that would require the party asserting the claim to be the party to whom the call is directed. Any other reading, would render the exception for calls 'made with the prior express consent of the called party' a nullity.

**\*8** 2010 WL 3946713, at \*9. Judge Wolfson thus determined that "it is the intended recipient of the call that has standing to bring an action for a violation of § 227(b)(1)(A)(iii)." *Id*. at \*10.

We respectfully disagree with these holdings. If we assume that the term "called party" is synonymous with "intended recipient" (and does not refer to the person who received the call and hence was "called"), we nonetheless do not believe that granting standing to persons other than "called parties" does any violence to the statute itself or to its application in practice. After all, the exception for calls "made with the prior express consent of the called party" can operate to protect a defendant from liability even if someone other than the "called party" seeks to bring suit. Here, for instance, AFNI could conceivably claim that it had the prior express consent of Sampson even though it is Anderson who brings this case. Moreover, the concern that seems to underlie the holdings in the *Leyse* line of cases—that unless standing is restricted to "called parties" a chance recipient of a call made to a phone line in which one has no personal interest could bring suit under the TCPA—could likely be addressed through the requirements of constitutional standing, under which such a chance recipient would likely not be able to demonstrate injury in fact, and prudential standing, under which such a fortuitous callee would probably fall outside the TCPA's zone of interests.

Moreover, if the *Leyse, Kopff,* and *Cellco* decisions succeed in addressing two problems—the imposition of liability upon a defendant notwithstanding the procurement of consent from the intended recipient of a call, and the bringing of a suit by the chance recipient of a call—their holdings generate other difficulties. In cases such as this one—where the intended recipient of the defendant's calls did not express consent to receiving those calls [FN3] but the defendant accidentally called a third party—it would appear under *Leyse, Kopff,* and *Cellco* that no person would have a cause of action, no matter how frequently or for how long such calls continued. Moreover, under the *Leyse* line of cases, a plaintiff would have to prove that the defendant intended to call the plaintiff just to demonstrate standing. Such a question seems poorly suited to a threshold inquiry.

> FN3. AFNI has neither alleged nor adduced any evidence that shows it secured Sampson's consent to its calls.

The fundamental point is that § 227(b)(3) unambiguously grants standing to any "person or entity," and this grant does not contradict the rest of the statute. Consequently, we need not consider whether extending standing beyond "called parties" is workable in practice, and we certainly need not investigate whether the legislative history of the TCPA supports restricting standing only to "telephone subscribers," as AFNI urges. The TCPA makes plain that the only limitations on standing under the statute are those imposed by constitutional and prudential requirements. Because Anderson has met these requirements, she has standing to assert her TCPA claims.

**2. *Anderson's Claims Under* § 227(b)(1)*(A) &* (d)(1) *(A)***

**\*9** We will next examine Anderson's claims under 47 U.S.C. § 227(b) (1)(A)(iii), which proscribes the making of calls to telephone numbers assigned to cellular telephone services using automatic telephone dialing systems or artificial or prerecorded voices, and § 227(d)(1)(A), which requires telephone calls made using any automatic telephone dialing system to comply with certain technical and procedural standards. AFNI does not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

specifically seek summary judgment with respect to the first claim, and the parties agree that AFNI made no calls to a cellular telephone associated with Anderson. Def.'s MSJ ¶ 30; Pl.'s Resp. ¶ 30. We will consequently dismiss Anderson's claim under § 227(b)(1)(A)(iii).

As for § 227(d)(1)(A), Anderson avers that "[a]lthough the phrase 'automatic telephone dialing system' is defined in the TCPA and used as an element for certain *other types* of unlawful calls, it is simply not an element of Plaintiff's claim here." Pl.'s Resp. at 28 (emphasis in original). Though this statement plainly contradicts Paragraph 32(c) of Anderson's complaint, we will take it to mean that she has abandoned her claim under § 227(d)(1) (A), and will grant AFNI's summary judgment motion with respect to this claim.

### 3. *Anderson's Claim under § 227(b)(1)(B)*

We are left under the TCPA only with Anderson's claim as to § 227(b)(1)(B), to which AFNI has counterposed its second and third arguments regarding exemptions under the TCPA. As we have already pointed out, § 227(b)(1)(B) does not extend to calls "exempted by rule of order by the Commission under paragraph (2)(B)." Section 227(b)(2)(B) permits the FCC to

> by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe—
>
> (i) calls that are not made for a commercial purpose; and
>
> (ii) such classes or categories of calls made for commercial purposes as the Commission determines—
>
> (I) will not adversely affect the privacy rights that this section is intended to protect; and
>
> (II) do not include the transmission of any unsolicited advertisement.

In 1992, the Commission promulgated rules exempting from the coverage of § 227(b)(1)(B) any "call or message by, or on behalf, of a caller ... (2) That is made for a commercial purpose but does not include the transmission of any unsolicited advertisement, [or] (3) To any person with whom the caller has an established business relationship at the time the call is made." FCC, 57 Fed.Reg. 48,333, 48,335 (Oct. 23, 1992) (codified at 47 C.F.R. § 64.1200(c)). In 2003, the FCC amended § 64.1200 to exempt any call that "(iii) Is made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation, [or] (iv) Is made to any person with whom the caller has an established business relationship at the time the call is made." FCC, 68 Fed.Reg. 44,144, 44,177 (Jul. 25, 2003) (codified at § 64.1200(a)(2)).

**\*10** While the FCC has not further amended § 64.1200(a)(2) since 2003, it commented on the application of this rule both before and after it issued the 2003 amendments. In a 1992 Report and Order, the Commission explained that "all debt collection circumstances involve a prior or existing business relationship," and concluded that "prerecorded debt collection calls would be exempt from the prohibitions on such calls to residences as: (1) calls from a party with whom the consumer has an established business relationship, and (2) commercial calls which do not adversely affect privacy rights and which do not transmit an unsolicited advertisement." 7 FCC Rcd. 8752, 8771, 8773 (Oct. 16, 1992). In a 1995 Memorandum Opinion and Order, the FCC clarified its 1992 position, explaining that

> As we stated in the [1992] Report and Order, prerecorded debt collection calls are adequately covered by exemptions adopted in our rules. Our rules explicitly exempt calls made either by a party with whom the subscriber has an established business relationship or calls that do not transmit an unsolicited advertisement and are made for a commercial purpose. Household confuses the two exemptions. We have spe-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

cifically noted that 'prerecorded debt collection calls [are] exempt from the prohibitions on [prerecorded] calls to residences as ... commercial calls ... which do not transmit an unsolicited advertisement.' Nevertheless, the Report and Order explicitly states that subscribers who sever a business relationship are revoking consent to any future solicitation. Because the termination of an established business relationship is significant only in the context of solicitation calls, that act of terminating such a relationship would not hinder or thwart creditors' attempts to reach debtors by telephone.

10 FCC Rcd. 12391, 12400 (Aug. 7, 1995) (ellipses and brackets in original). In the 2003 Report and Order revising § 64.1200, the FCC reiterated that "the act of 'terminating' an established business relationship will not hinder or thwart creditors' attempts to reach debtors by telephone, to the extent that debt collection calls constitute neither telephone solicitations nor include unsolicited advertisements." FCC, 68 Fed.Reg. 44,144, 44,158 (Jul. 25, 2003). And in a 2008 Declaratory Ruling, the FCC reiterated that "[i]n the 1992 TCPA Order, the Commission concluded that an express exemption for debt collection calls to residences was unnecessary as such calls fall within the exemptions adopted for commercial calls which do not transmit an unsolicited advertisement and for established business relationships." 23 FCC Rcd. 559, 561 (Jan. 4, 2008).

AFNI argues that its calls to the 412 number fall under both the exemption for commercial calls that do " 'not include or introduce an unsolicited advertisement or constitute a telephone solicitation,' " Def.'s MSJ at 30 (quoting 47 C.F.R. § 64.1200(a) (2)(iii)), and the exemption for "calls made to a party with whom the caller has an established business relationship." *Id*. at 32 (citing § 64.1200(a)(2)(iv)). Anderson responds that (1) "the Commission failed to consider or address *in any way* unsolicited calls from debt collectors to innocent non-debtors," Pl.'s Resp. at 26 (emphasis in original); (2) "the reference to 'unsolicited advertisements' has no application in this context," *id*. at 27; and (3) "[i]f the Commission acts outside of its authority through an impermissible construction of the TCPA, its rules are not entitled to deference to the courts." *Id*.

*11 It may be true that the FCC's Reports and Memoranda leave some slight doubt as to whether debt collection calls to non-debtors are covered by the exemption for established business relationships. While the 1992 Report and Order flat-footedly states that such calls always "involve a prior or existing business relationship," 7 FCC Rcd. at 8771, the Commission's 1995 Memorandum Opinion and Order seems to suggest that this relationship may be terminated, that it is of relevance only in the context of solicitation calls, and that debt collection calls are principally protected by the exemption for "calls that do not transmit an unsolicited advertisement and are made for a commercial purpose." 10 FCC Rcd. at 12400. The 2003 Report and Order similarly focuses on the fact that debt collection calls "constitute neither telephone solicitations nor include unsolicited advertisements," 68 Fed.Reg. at 44,158. The 2008 Declaratory Ruling seems to leave some ambiguity as to which exemption covers debt collection calls, stating merely that such calls fall within "the exemptions adopted for commercial calls" and identifying those exemptions.[FN4] 23 FCC Rcd. at 561.

> FN4. While the 2008 Declaratory Ruling most naturally suggests that such calls fall *within both* exemptions, it could conceivably mean that such calls merely fall within the regulatory space *spanned by both* exemptions.

Moreover, as Judge Davis observed in *Watson v. NCO Group, Inc*., 462 F.Supp.2d 641, 644 (E.D.Pa.2006), "the FCC has not directly addressed the issue of erroneous debt collection calls." Since it would appear that "an erroneously called non-debtor has no such existing business relationship" with a debt collector, it might "follow[ ] that the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1808779 (E.D.Pa.)
**(Cite as: 2011 WL 1808779 (E.D.Pa.))**

purview of the FCC's exemption does not extend to the type of calls made in this case." *Id*. On the other hand, in 1992 the FCC stated, without qualification, that "all debt collection circumstances involve a prior or existing business relationship," 7 FCC Rcd. at 8771 (emphasis added), and it has not chosen in the succeeding years to modify this categorical pronouncement. Thus, other courts have accepted that this statement applies even to calls to non-debtors. *See, e.g., Meadows v. Franklin Collection Serv., Inc.,* 2010 WL 2605048, at *6 (N.D.Ala.2010) ("[T]he FCC has determined that *all debt collection* circumstances are excluded from the TCPA's coverage. This finding is broad enough to cover a debt collection activity that contacts a non-debtor."); *Meadows v. Franklin Collection Serv., Inc.,* 2011 WL 479997, at *4 (11th Cir.2011) ("[T]he FCC has determined that all debt-collection circumstances are excluded from the TCPA's coverage, and thus the exemptions apply when a debt collector contacts a non-debtor in an effort to collect a debt.").

We need not decide today whether the exemption under 47 C.F.R. § 64.1200(a)(2)(iv) respecting established business relationships applies to debt collection calls to non-debtors, however, because there is no controversy as to the applicability of § 64.1200(a)(2) (iii) to such calls. Calls made purely for the purpose of collecting a debt *clearly* constitute calls "made for a commercial purpose" that "do[ ] not include or introduce an unsolicited advertisement or constitute a telephone solicitation," FN5 § 64.1200(a)(2)(iii), whether they are made to a debtor *or* non-debtor. Thus, we are aware of no court that has concluded that § 64.1200(a)(2)(iii) does *not* apply to debt collection calls to non-debtors. *See, e.g., McBride v. Affiliated Credit Servs., Inc.,* 2011 WL 841176, at *3 (D.Or.2011) ("While I certainly agree that non-debtors lack a prior business relationship with a debt collector, according to the Commission debt collection calls are not solicitations or advertisements and thus fall within a recognized exemption."); *Santino v. NCO Fin. Sys.,* 2011 WL 754874, at *6 (W.D.N.Y.2011) ("[T]he court concludes that the conduct on the part of defendant complained of in this case fits squarely within the exemption provided in 47 C.F.R. § 64.1200(a)(2)(iii)).").

> FN5. 47 U.S.C. § 227(a)(4) defines "telephone solicitation" to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." Section 227(a)(5) defines "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."

**\*12** It therefore appears that the exemption codified at 47 C.F.R. § 64.1200(a)(2)(iii) applies to calls to non-debtors made purely for the purpose of debt collection. While Anderson seems to urge us to consider whether this exemption constitutes "an impermissible construction of the TCPA," Pl.'s Resp. at 27, "[j]udicial review of Federal Communications Commission determinations under the Act is committed directly to the Courts of Appeal," *Verizon Maryland, Inc., v. Public Service Comm'n of Maryland,* 535 U.S. 635, 651 n. 5, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (Souter, J., concurring) (citing 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a)), and hence "this Court may not inquire into the validity of an FCC regulation." *AT & T Commc'ns of California, Inc. ., v. Pacific Bell,* 1998 WL 246652, at *2 (N.D.Cal.1998). Anderson's claim under § 227(b)(1)(B) is consequently foreclosed by the exemption at 47 C.F.R. § 64.1200(a)(2)(iii). Because all of Anderson's claims under the TCPA fail,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

we will grant AFNI's motion for summary judgment with respect to these claims and deny Anderson's motion for partial summary judgment.

**B.** *Anderson's Claims Under The FDCPA*

Congress enacted the Fair Debt Collection Practices Act in 1977, Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir.2006), to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Under the FDCPA, " 'consumer' means any natural person obligated or allegedly obligated to pay any debt," § 1692a(3), and " 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 1692a(5).

The FDCPA imposes limits upon communications made by a debt collector "for the purpose of acquiring location information about the consumer," § 1692b, or with "any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." § 1692c(b). The FDCPA also prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," § 1692d, and proscribes the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," § 1692e, or the use of "unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. But § 1692k(c) provides that

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

**\*13** Anderson alleges claims under §§ 1692b, c(b), d, e, and f, alleging AFNI engaged in the following, Pl.'s Compl. ¶ 26:

(a) Disclosing the debt to persons other than the debtor;

(b) Communicating with persons other than the debtor on more than one occasion;

(c) Communicating with persons other than the debtor;

(d) Causing the telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number;

(e) Falsely representing the amount, character or legal status of the debt;

(f) Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt; and

(g) Otherwise using false, deceptive or misleading and unfair or unconscionable means to collect or attempt to collect a debt.

AFNI contends that it is entitled to summary judgment for an array of reasons, but we will focus only on the first of these—that Anderson "cannot show that the obligations in question are consumer debts," Def.'s MSJ at 13—because it, by itself, is sufficient to warrant summary judgment in AFNI's favor.[FN6] It is well-established that "[a] threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.' " Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir.1987). See also Pollice v. National Tax Funding, L.P., 225

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1808779 (E.D.Pa.)
**(Cite as: 2011 WL 1808779 (E.D.Pa.))**

F.3d 379, 400 (3d Cir.2000) (same); *Gorbaty v. Portfolio Recovery Assocs., LLC,* 355 Fed. Appx. 580, 581 (3d Cir.2009) (same). Moreover, as our Court of Appeals explained in *HBO, id.* at 1168–69,

> FN6. AFNI additionally argues that: (1) "Plaintiff does not have standing to assert certain causes of action" under §§ 1692b, c, e, or f "as she was not the debtor nor were any efforts made to collect an obligation not owed by her from her," Def.'s MSJ at 15; (2) "[t]he frequency with which AFNI placed telephone calls to the Telephone Number does not violate § 1692d(5) and AFNI is entitled to summary judgment on this claim," *id.* at 17; and (3) "[t]he alleged violation in this matter was not intentional and occurred as a result of a bona fide error." *Id.* at 21.

[T]he type of transaction which may give rise to a 'debt' as defined in the FDCPA, is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection Act, *i.e.,* one involving the offer or extension of credit to a consumer. Specifically it is a transaction in which a consumer is offered or extended the right to acquire 'money, property, insurance, or services' which are 'primarily for household purposes' and to defer payment.
Consequently, as Judge Weiner has put it, "[b]y its terms ... the FDCPA applies to only consumer debt for personal, family or household purposes and not to commercial debt." *Martin v. Berke & Spielfogel,* 1995 WL 214453, at *4 (E.D.Pa.1995).

AFNI argues that "Plaintiff has not produced a single iota of tangible evidence concerning the underlying purpose of the debt," and that therefore "Anderson has produced no evidence to prove that the delinquent account is a debt as defined by the FDCPA." Def.'s MSJ at 14. Anderson responds that "[t]he debts are all being collected from an individual person," that "the addresses associated with the debts on AFNI's own records are residential addresses," and that "Defendant admits that it treated the debts at issue here assuming they were consumer debts and subject to the FDCPA." Pl.'s Resp. at 15. Consequently, Anderson urges that "[s]ince all inferences from this record must be made in Plaintiff's favor, as the nonmoving party, there exists a genuine issue of fact regarding the consumer nature of the debts at issue in this case." *Id.* at 16.

**\*14** While it is true that we "must draw all reasonable inferences in favor of the nonmoving party" in ruling on a motion for summary judgment, *Reeves,* 530 U.S. at 150, it is also true that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Anderson asks us to infer that the debts here were incurred "primarily for personal, family, or household purposes," § 1692a(5), solely because (1) Sampson is an individual, (2) the addresses associated with the debts at issue are "residential," and (3) AFNI treated these debts as if they were consumer debts. This we cannot do.

In the first place, individuals may—and often do—carry on commercial activities from residential settings. *See, e.g., Lang v. Winston & Winston, P.C.,* 2001 WL 641122, at *5 n. 1 (N.D.Ill.2001) (distinguishing broader class of "individuals who made purchases in their own name and used a residential address" from narrower group of individuals who "made the purchase primarily for personal, family or household purposes"). AFNI may have in an abundance of caution treated Sampson's obligations as consumer debts to protect itself from FDCPA liability. In any case, a debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of that obligation itself. *See, e.g., Slenk v. Transworld Systems, Inc.,* 236 F.3d 1072, 1076 (9th Cir.2001) ("We, too, refuse to ignore Congress's intent by defining a consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt.") No reason-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1808779 (E.D.Pa.)
**(Cite as: 2011 WL 1808779 (E.D.Pa.))**

able jury could find, based on the evidence Anderson has adduced, that the obligations at issue here were consumer debts. A residential address and an individual debtor—on inferences alone—do not a consumer debt make, even applying the grace we are obliged to extend. In short, Anderson's proffers regarding the nature of Sampson's debt amount to nothing more than conjecture or speculation.

AFNI has shown that Anderson "has failed to establish one or more essential elements of [her] case" under the FDCPA, *Connection Training Servs.,* 358 Fed. Appx. at 318, and Anderson has not "come forward with specific facts indicating a genuine issue for trial." *Id*. We will consequently grant AFNI's motion for summary judgment as to Anderson's FDCPA claims.

**C.** *Anderson's Claim Under Pennsylvania Law*

Our jurisdiction over Anderson's Pennsylvania state law claims rests on our supplemental jurisdiction, which we may exercise only "as long as there is a federal claim which gives the court jurisdiction." *Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 989 n. 48 (3d Cir.1984). Having granted AFNI's motion for summary judgment with respect to all of Anderson's federal claims, we decline to exercise our supplemental jurisdiction over her remaining state claim. As a result, we will dismiss the third claim of her complaint without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

E.D.Pa.,2011.
Anderson v. AFNI, Inc.
Slip Copy, 2011 WL 1808779 (E.D.Pa.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.